## DAVIS v DOW CORNING CORPORATION

Docket No. 165650. Submitted December 13, 1994, at Detroit. Decided
March 7, 1995, at 9:30 A.M. Leave to appeal sought.

Eva and Wilton Davis brought an action against Dow Corning
Corporation and other makers of silicone gel breast implants.
The action was consolidated for the purpose of discovery with
all other silicone gel implant products liability actions in the
state in the Wayne Circuit Court pursuant to Administrative
Order No. 1993-2. The defendants moved for an order permit-
ting them to conduct ex parte interviews of the plaintiffs'
treating physicians. The court, James Mies, J., ruled that the
defendants were entitled to interview the physicians, but al-
lowed the parties time to file briefs concerning the question
whether the plaintiffs could inform the physicians that they
had a right to decline any ex parte interview. Before the court
had ruled with respect to that question, the plaintiffs' counsel
sent an open letter to the treating physicians that informed
them that they were not obligated to speak to the defense
counsel and asked them to request that the plaintiffs' counsel
be present at any meeting between the physicians and the
defense counsel. An interview printed in the *Detroit Legal
News* also referred to the letter to the physicians. The defen-
dants sought a protective order. Thereafter, the court ruled
that the counsel for either side could conduct ex parte inter-
views with the plaintiffs' treating physicians provided that the
physicians specifically were advised that they were free to
grant or to decline an ex parte interview. The court also ruled
that it had been improper for the plaintiffs' counsel to request
that the physicians decline to have ex parte interviews with the
defense counsel and entered a protective order that required
that the plaintiffs' counsel send a letter to the treating physi-

REFERENCES

Am Jur 2d, Witnesses §§ 505, 506.

Construction and effect of statute removing or modifying, in per-
    sonal injury actions, patient's privilege against disclosure by
    physician. 25 ALR2d 1429.

Commencing action involving physical condition of plaintiff or
    decedent as waiving physician-patient privilege as to discovery
    proceedings. 21 ALR3d 912.

cians informing them that they were not required to request that the plaintiffs' counsel participate in any meeting with the defense counsel and to publish that letter in the *Detroit Legal News.* The plaintiffs appealed by leave granted.

The Court of Appeals *held:*

1. The plaintiffs, by bringing personal injury claims alleging injuries arising out of a defective medical device, have placed their physical condition in controversy and, thus, have waived their physician-patient privilege. Accordingly, the trial court properly concluded that the defense counsel were entitled to meet ex parte with the plaintiffs' treating physicians.

2. The protective order did not violate any free speech rights under the First Amendment. The court properly prohibited the plaintiffs' counsel from continuing to violate MRPC 3.4(f). The court's protective order is limited in scope and does not prohibit the plaintiffs and their counsel from discussing all potential issues with anyone. The order seeks only to remedy the ethical violations.

Affirmed.

PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — PRODUCTS LIABILITY.

The bringing of a personal injury claim arising out of injuries suffered as a result of a defective medical device places the physical condition of the plaintiff in controversy and waives the plaintiff's physician-patient privilege.

*Charfoos & Christensen, P.C.* (by *J. Douglas Peters, L.S. Charfoos,* and *David R. Parker*), for the plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Lamont E. Buffington* and *Robert D. Goldstein*), for Dow Corning Corporation.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Richard A. Kitch* and *John P. Hessburg*), for Inamed, Inc., and Minnesota Mining and Manufacturing.

*Dykema Gossett* (by *Susan Artinian, Lori M. Silsbury,* and *Kathleen D. Hunt*), for Baxter Healthcare Corporation.

Amicus Curiae:

*Mark Brewer (Paul Denenfeld,* of Counsel), for the ACLU Fund of Michigan.

Before: CORRIGAN, P.J., and CAVANAGH and L. C. ROOT,* JJ.

PER CURIAM. Plaintiffs appeal by leave granted from a protective order entered by the circuit court concerning ex parte discovery interviews with plaintiffs' treating physicians in this silicone gel breast implant products liability litigation. We affirm.

All silicone gel implant products liability actions pending in this state have been consolidated for purposes of pretrial discovery pursuant to Administrative Order No. 1993-2, 442 Mich cix (1993).

On March 19, 1993, defendant implant manufacturers moved for an order permitting them to conduct ex parte interviews with plaintiffs' treating physicians. After hearing oral argument on May 7, 1993, the court ruled that defendants were entitled to interview the physicians, but allowed the parties to file additional briefs to address whether plaintiffs could contact the physicians to inform them that they had the right to decline any ex parte meetings. The court indicated that it would issue its ruling on May 21, 1993. Before that date, however, plaintiffs' counsel sent an open letter to the treating physicians requesting them not to speak with defense counsel unless plaintiffs' counsel was also present. That letter read as follows:

> One or more attorneys representing breast implant manufacturer DOW [sic] Corning (or possibly

---

* Circuit judge, sitting on the Court of Appeals by assignment.

other breast implant manufacturers) may attempt to contact you to arrange a meeting and discussion concerning your patient(s) who has received breast implants. I respectfully request that you choose not to speak with these attorneys unless I am present. I am the attorney representing the female recipients of breast implants.

There is no law that says you must speak with the defense attorneys. The defense attorneys may try to set up a private meeting because it has been their historical practice to try to use a patient's treating physician to dispute the medical claim—to place blame on anything other than their product.

As you are aware, the problems with breast implants are only now beginning to filter down to physician practitioners. The medical dangers of silicone and gel implants are being increasingly reported in the professional and lay press.

From the evidence developed to date, it is apparent that the silicone breast implant manufacturers misled America's physicians both about the safety and dangers of breast implants. They are continuing in their efforts in spite of the FDA ban on gel implants for nonclinical study reconstructive surgery and in spite of the pending investigation into the health effects of all implants with silicone envelopes. Indeed, at least two plastic surgeons have filed *fraud* actions against the gel implant manufacturers. . . .

The Charfoos & Christensen law firm has not sued any of the physician implanters or other health care providers involved with problem [sic]. It is our belief that both physicians and patients were misled by the implant manufacturers.

You do not have to talk with the manufacturer attorneys unless you wish to. If you want to meet with the attorneys for the breast implant manufacturers, please ask that I be included in the meeting as I am the attorney representing your patient.

> Thank you for your help. Of course, please call if you have any questions.

Plaintiffs' counsel also referred to the mass mailing letter in an interview that was published in the *Detroit Legal News.* In response to those actions, defendants on May 20, 1993, filed an emergency motion for a protective order.

At the May 21 hearing, the court issued its ruling with respect to the March 19 motion. It ruled that both plaintiffs' and defendants' representatives were permitted to conduct ex parte interviews with plaintiffs' treating physicians, provided that they specifically advised the physicians that they were free to grant or decline an ex parte interview. That ruling was incorporated into the court's June 1, 1993, order.

On June 2, 1993, the court ruled from the bench that it was improper for plaintiffs' counsel to request the physicians to decline interviews by defense counsel in the absence of counsel for their patients. In a written order dated June 10, 1993, the court granted defendants' May 20 motion for a protective order, requiring plaintiffs' counsel to send a court-drafted letter on the law firm's letterhead to the treating physicians informing them that they were not required to request that plaintiffs' counsel participate in the ex parte meetings and to publish the letter in the *Detroit Legal News.* That letter was to read as follows:

> On May 12, 1993, I issued an open letter to Michigan physicians in the form of a press release. I also wrote to you on May 13, 1993 concerning pending breast implant litigation. Subsequently, the Wayne County Circuit Court, where all Michigan state court breast implant cases are pending, has entered an order, a copy of which is enclosed. As you will note, this order provides that defense

attorneys are permitted to speak with physicians concerning any claim arising out of the silicone implant case filed by a patient who has signed a medical authorization for release of information. The Court has also ruled that such patients and their attorneys may not request the physician to speak with a defense attorney only if the patient's attorney is also permitted to be present.

Any request from my office contained in any prior communication to you, to the effect that you should choose not to speak to a breast implant manufacturer's attorney unless I am present, is· hereby withdrawn, pursuant to the foregoing orders of the court.

Plaintiffs now appeal by leave granted from the June 10 order. The American Civil Liberties Union has filed, by leave granted, a brief amicus curiae, that addresses the First Amendment issue.

On appeal, plaintiffs first argue that the trial court erred in relying on *Domako v Rowe*, 438 Mich 347; 475 NW2d 30 (1991), to support its ruling that defendants' attorneys were entitled to communicate ex parte with plaintiffs' treating physicians.[1] Plaintiffs assert that the holding of that medical malpractice case is inapposite in the context of products liability litigation.

In *Domako*, our Supreme Court held that the defense counsel properly could conduct an ex parte interview with the plaintiff's treating physician once the physician-patient privilege had been waived. The Court noted that under MCL 600.2157; MSA 27A.2157, the physician-patient privilege is waived when a patient brings a malpractice or personal injury suit. *Id.* at 353-354.

[1] We note that, contrary to defendants' assertion, this issue was properly preserved for review because it was raised in plaintiffs' brief in support of emergency application for leave to appeal. MCR 7.205(D) (4); see *Giddings v Detroit*, 178 Mich App 749, 759; 444 NW2d 242 (1989).

Likewise, under MCR 2.314(A)(1)(b), medical information is subject to discovery when the mental or physical condition of a party is in controversy. *Id.* at 354. Relying on those rules, the Court reasoned that once the patient voluntarily allows discovery of medical information, there are no sound legal or policy grounds for restricting access to the patient's physician. *Id.* at 361. In fact, prohibition of all ex parte interviews would be inconsistent with the purpose of providing equal access to relevant evidence and efficient, cost-effective litigation. *Id.* at 361-362.

The Court's reasoning in *Domako* is equally applicable in the context of the present case. Plaintiffs have brought personal injury claims and have placed their physical conditions in controversy. Nothing in the Court's reasoning in *Domako* regarding the propriety of ex parte interviews with treating physicians is tied in any manner to the unique features of medical malpractice cases. Instead, the *Domako* decision is based upon this state's broad policy favoring far-reaching, open, and effective discovery practice, applicable in all types of civil litigation, and the conclusion that ex parte discovery interviews appear to advance those well-recognized policy goals. *Id.* at 359-362. Indeed, the *Domako* decision cites a products liability case, *Doe v Eli Lilly & Co, Inc,* 99 FRD 126 (D DC, 1982), as authority supporting its recognition of ex parte interviews as a proper method of discovery. *Domako, supra* at 361; see also *G P Enterprises, Inc v Jackson Nat'l Life Ins Co,* 202 Mich App 557, 567-568; 509 NW2d 780 (1993) (applying the *Domako* rule outside the medical malpractice context).

Consequently, the trial court properly concluded that defendants were entitled to meet ex parte with plaintiffs' treating physicians.

Next, plaintiffs argue that the June 10 order violates their free speech rights under the First Amendment of the United States Constitution. We disagree.

In *Gentile v State Bar of Nevada,* 501 US 1030, 1072-1073; 111 S Ct 2720; 115 L Ed 2d 888 (1991), the United States Supreme Court, citing *Seattle Times Co v Rhinehart,* 467 US 20; 104 S Ct 2199; 81 L Ed 2d 17 (1984), determined that the speech of lawyers who represent clients in pending cases may, consistent with the First Amendment, be regulated under a less demanding standard than the "clear and present danger" standard established for regulation of the press. The speech of those participating before the courts can be limited to a greater extent than that of those who are strangers to the litigation. Moreover, "[a]n attorney may not, by speech or by other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal." *Gentile, supra* at 1071.

In the instant case, the court found that the conduct of plaintiffs' counsel in issuing a press release and an open letter to the treating physicians was in violation of MRPC 3.4(f), which prohibits an attorney from asking a person other than a client to refrain from voluntarily providing relevant information to another party. Additionally, by failing to await and abide by the trial court's ruling, counsel exceeded his right to preserve his point for appeal. See *Zal v Steppe,* 968 F2d 924, 928 (CA 9, 1992).

Plaintiffs' assertion that the protective order forbids both patients and their attorneys from discussing all potential issues in this case with anyone is clearly incorrect. The order imposes no such blanket restriction. At most, it simply prohibits plaintiffs or their attorneys from requesting

treating physicians to refuse to speak with defense counsel in the absence of plaintiffs' attorney. Nothing in the order prevents patients or their counsel from discussing any other issues involved in the case with anyone, including treating physicians.

The order was drawn narrowly to remedy the ethical violations committed by plaintiffs' counsel. Compare *Upjohn Co v Aetna Casualty & Surety Co,* 768 F Supp 1186, 1216-1217 (WD Mich, 1990) (magistrate properly required the defendant, which had violated ethical rules by having its investigators improperly question the plaintiff's former employees, to deliver a letter to former employees identifying the interviewer and the interviewer's purpose and indicating the reader's right to refuse to be interviewed). It was an appropriate means of ensuring that neither plaintiffs nor their attorneys were permitted to influence the treating physicians to refuse to engage in any ex parte interviews, thereby rendering meaningless the right to seek such interviews that was recognized in *Domako.*

We are unpersuaded by the argument of amicus curiae that the order impermissibly compels plaintiffs' counsel to speak. First, plaintiffs' counsel is not being forced to subscribe to a political or ideological belief to which he objects. See, e.g., *Abood v Detroit Bd of Ed,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977); *Wooley v Maynard,* 430 US 705; 97 S Ct 1428; 51 L Ed 2d 752 (1977). Secondly, as we have explained above, it is not a violation of the First Amendment to impose certain restrictions on attorney speech in the context of litigation and in order to remedy ethical violations. *Gentile, supra; Seattle Times, supra* at 32, n 18. *Gentile* recognized that membership in the bar is a privilege that comes with conditions. 501 US 1066. The Court observed that " '[o]bedience to

ethical precepts may require abstention from what, in other circumstances, would be constitutionally protected speech.' " *Id.* at 1071, quoting *In Re Sawyer,* 360 US 622, 646-647; 79 S Ct 1376; 3 L Ed 2d 1473 (1959) (Stewart, J., concurring).

Accordingly, the trial court properly entered its protective order.

Affirmed.