*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FELISHA NEWBY,

          Plaintiff-Appellee,

v

AMERICAN ZURICH INSURANCE
COMPANY,

          Defendant-Appellant,

and

JOHN DOE and DONTA TILL,

          Defendants.

UNPUBLISHED
August 1, 2019

No. 342741
Macomb Circuit Court
LC No. 2017-003320-NI

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant, American Zurich Insurance Company (American), appeals by leave granted the order of the trial court denying its motion for a qualified protective order (QPO) to enable American to seek to conduct ex parte interviews with the physicians treating plaintiff, Felisha Newby. We affirm.

## I. FACTS

This is an action for personal protection insurance (PIP) benefits under Michigan's no-fault act, MCL 500.3101 *et seq.* On September 25, 2016, plaintiff allegedly was involved in a motor vehicle accident. On that day, defendant Donta Till allegedly loaned her car to someone as yet unidentified in this case, and referred to here as defendant John Doe. Doe, driving Till's car, allegedly crashed into plaintiff as she was driving in Warren, Michigan. Plaintiff allegedly suffered injuries to her neck, back, shoulders, and knees as a result of the accident. At the time of the accident, plaintiff was insured under a no-fault insurance policy issued by American. She

sought PIP benefits from American for her medical care and treatment, which American refused to pay.

Plaintiff filed this action, alleging that American improperly withheld PIP benefits to which she is entitled under its no-fault insurance policy. American filed an answer, denying plaintiff's allegations. Thereafter, American requested that plaintiff authorize a proposed QPO, waiving her confidentiality rights and authorizing the disclosure to American of her personal health information protected under the Health Insurance Portability and Accountability Act (HIPAA).[1] The parties agree that the proposed QPO would have authorized American to seek to conduct ex parte interviews with plaintiff's treating physicians regarding her medical condition and treatment.

Plaintiff declined to authorize the proposed QPO. American then filed a motion in the trial court, requesting that the trial court issue the QPO. American argued that plaintiff had waived her physician-patient privilege by filing the action for PIP benefits, thereby entitling American to seek a QPO. Plaintiff argued that permitting American to conduct ex parte interviews with her treating physicians would allow it unfettered access to all of her physicians and medical records, regardless of relevance.

The trial court denied American's motion for the QPO without prejudice to American again bringing the motion if the facts warranted. The trial court subsequently denied American's motion for reconsideration. This Court thereafter granted American's application for leave to appeal. *Newby v American Zurich Ins Co*, unpublished order of the Court of Appeals, entered June 20, 2018 (Docket No. 342741).

## II. DISCUSSION

American contends that the trial court abused its discretion in denying American's motion for a QPO. American argues that plaintiff's waiver of her physician-patient privilege entitles it to conduct ex parte interviews with her physicians under Michigan law, which favors open, broad, and informal discovery practices. We review a trial court's decision on a motion for a protective order for an abuse of discretion. *Holman v Rasak*, 486 Mich 429, 448 n 10; 785 NW2d 98 (2010). A trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *Id*. We review de novo the interpretation of court rules and statutes. *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 187; 732 NW2d 88 (2007). In this case, we disagree that the trial court abused its discretion in denying the motion for a QPO.

American argues that it is entitled to ex parte interviews of plaintiff's treating physicians because insurers are entitled to seek ex parte interviews in other types of civil litigation. In support, American points to *Holman*, and to *Domako v Rowe*, 438 Mich 347; 475 NW2d 30 (1991), among other cases. In *Holman*, a case involving alleged medical malpractice, the

---

[1] HIPPA is codified at 29 USC 1181 *et seq*, 42 USC 300gg, and 42 USC 1320d *et seq*. *McNeill-Marks v MidMichigan Med Center-Gratiot*, 502 Mich 851, 852 n 3; 912 NW2d 181 (2018) (ZAHRA, J., dissenting).

plaintiff contended that HIPAA precluded the defendant from seeking an ex parte interview with the plaintiff's treating physician. Our Supreme Court disagreed, explaining that under Michigan law, defense counsel was entitled to seek an ex parte interview with a plaintiff's treating physician once the plaintiff waived the physician-patient privilege. The Court held that ex parte interviews, which are permitted under Michigan law, are also consistent with HIPAA regulations, provided that "reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of [45 CFR 164.512(e)(1)(v)]." *Holman*, 486 Mich at 449 (quotation marks and citation omitted).[2] Thus, as long as a treating physician has satisfactory assurance that reasonable efforts have been made to obtain a QPO consistent with HIPAA, the physician's disclosure of protected health information during an ex parte interview does not violate Michigan law or HIPAA. *Holman*, 486 Mich at 446, 449 (holding that Michigan law is not contrary to HIPAA, nor does HIPAA "preempt Michigan law concerning ex parte interviews").

*Holman* reiterated the holding of *Domako* that, in the context of a medical malpractice action, a defendant is permitted to seek an ex parte interview with a plaintiff's treating physician once the plaintiff has waived the physician-patient privilege. *Holman*, 486 Mich at 436, citing *Domako*, 438 Mich at 361 ("Although the [Michigan Court Rules] are silent on informal methods of discovery, prohibition of all ex parte interviews would be inconsistent with the purpose of providing equal access to relevant evidence and efficient, cost-effective litigation"). *Holman* also reiterated that a plaintiff who files a personal injury action, and who produces as a witness his or her treating physician, is considered to have waived the physician-patient privilege as to all treating physicians. *Holman*, 486 Mich at 436-437, citing MCL 600.2157 and *Domako*, 438 Mich at 361 (holding that while "confidentiality is adequately preserved by the physician-patient privilege[, o]nce that privilege is waived, there are no sound legal or policy grounds for restricting access to the witness").

This Court has held that this discovery practice is not limited to medical malpractice actions. In *Davis v Dow Corning Corp*, 209 Mich App 287, 293; 530 NW2d 178 (1995), this Court stated that "[n]othing in the Court's reasoning in *Domako* regarding the propriety of ex parte interviews with treating physicians is tied in any manner to the unique features of medical malpractice cases. Instead, the *Domako* decision is . . . applicable in all types of civil litigation."

In this case, plaintiff initiated this action under the no-fault act, seeking PIP benefits from American under the no-fault insurance policy it issued to her. American suggests that the reasoning of *Holman* extends to an action brought under the no-fault act, and permits it to seek a QPO to conduct ex parte interviews with plaintiff's treating physicians. We agree. However, we disagree with American's assertion that the court rules, and not the no-fault act, control the circumstances of a trial court granting or denying a QPO in an action seeking PIP benefits.

---

[2] Our Supreme Court also observed that "[n]othing in either HIPAA or Michigan law, however, *requires* a covered entity to agree to an informal ex parte interview with defense counsel, or to disclose health information during such an interview." *Holman,* 486 Mich at 449.

In *Muci*, our Supreme Court discussed the scope of Michigan's no-fault act, stating, in pertinent part:

[W]e have, without exception, emphasized the act's comprehensive nature. What is unmistakable about this first-party payment scheme is that it was designed to cover contingencies that could arise, including, as relevant here, the process for making a claim, *the procedures for investigation by the insurer*, and the range of available enforcement tools. All of which are found within the four corners of the act. Thus, the legislative enactment in great detail dictated how injured parties are to make claims with "reasonable proof," mandated rapid payment within 30 days by insurers if the proofs were reasonable, and *established fraud prevention investigation and examination rights for insurers that worked in accord with those important goals*. [*Muci*, 478 Mich at 187-188 (footnote omitted) (emphasis added).]

Thus, *Muci* emphasizes that the no-fault act provides, within the four corners of the act, the methods available for an insurer seeking to investigate the validity of a claim. *Id*. The Court in *Muci* further emphasized that no-fault cases are different from other types of civil litigation, stating:

The argument of the insured in this matter, which was adopted by the trial court and the Court of Appeals majority, has been that in spite of the Legislature's obvious intent shown throughout the no-fault act to treat automobile accident cases falling within the scope of the act differently, these cases, and in particular this claim and investigation situation, should be seen as just another species of civil litigation subject to all the generally applicable court rules. While the court rules control matters on which the no-fault act is silent, they do not control matters specifically addressed by the act. [*Id*. at 189-190.]

The Court in *Muci* rejected the argument that a case brought under the no-fault act should be treated as merely a type of civil litigation subject to the court rules. Rather, our Supreme Court emphasized that the court rules do not control on matters specifically addressed by the no-fault act. *Id*. The Court also observed that Michigan's Legislature included in the no-fault act MCL 500.3159 to protect an insured from discovery practices that cause "annoyance, embarrassment, or oppression." *Id*. at 189. MCL 500.3159 provides:

In a dispute regarding an insurer's right to discovery of facts about an injured person's earnings or about his history, condition, treatment and dates and costs of treatment, a court may enter an order for the discovery. The order may be made only on motion for good cause shown and upon notice to all persons having an interest, and shall specify the time, place, manner, conditions and scope of the discovery. A court, in order to protect against annoyance, embarrassment or oppression, as justice requires, may enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.

In some respects, the language of MCL 500.3159 mirrors that of MCR 2.302(C), which also seeks to protect against annoyance, embarrassment, or oppression in discovery. MCR 2.302(C) states:

> On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . [.]

Our Supreme Court in *Holman* observed that "a trial court retains its discretion under MCR 2.302(C) to issue protective orders and to impose conditions on ex parte interviews." *Holman*, 486 Mich at 447-448 (footnotes omitted). But our Supreme Court in *Muci* stated that "[w]hile the court rules control matters on which the no-fault act is silent, they do not control matters specifically addressed by the [no-fault] act." *Muci*, 478 Mich at 190.

In this case, the parties do not dispute that plaintiff waived her physician-patient privilege by filing this first-party claim for PIP benefits. See *Holman*, 486 Mich at 436-437. American then sought a QPO, ostensibly complying with the requirements of HIPAA that (1) plaintiff's treating physicians have satisfactory assurance that reasonable efforts have been made to obtain a QPO consistent with HIPAA, (2) the QPO prohibits the parties from disclosing protected health information for any purpose other than the litigation, and (3) the QPO requires the protected health information be destroyed or returned to the healthcare physician at the conclusion of the litigation. See *Holman,* 486 Mich at 440. Plaintiff disputed American's entitlement to the QPO, creating a "dispute regarding an insurer's right to discovery of facts" under MCL 500.3159. See *State Farm Mut Ins Co v Broe Rehab Servs, Inc*, 289 Mich App 277, 281; 811 NW2d 1 (2010).

Under MCL 500.3159, American was required to establish good cause for seeking the discovery. At the motion hearing in this case, American confirmed that there was nothing unusual about plaintiff's case that warranted ex parte interviews with plaintiff's treating physicians. Without "a particular and specific demonstration of fact," rather than "stereotyped and conclusory statements," American did not establish good cause to support its motion for a QPO. See *Muci*, 478 Mich at 192; MCL 500.3159.

American argues that it is plaintiff's burden under MCR 2.302(C) to demonstrate "good cause" and to establish that justice requires the denial of the QPO. However, MCR 2.302(C) applies to a motion by a party or by the person *from whom discovery is sought*" (emphasis added). Under that court rule, the person from whom discovery is sought must provide reasonable notice and show good cause when seeking protection from discovery; the trial court may then issue "any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." MCR 2.302(C). In this case, however, plaintiff has not filed a motion seeking protection from discovery. Rather, American sought a QPO from the trial court; under MCL 500.3159, the trial court is authorized, "in a dispute regarding an insurer's right to discovery of facts about an injured person's earnings or about his history, condition, treatment and dates and costs of treatment" to enter an order of discovery, but only "for good cause shown." Once good cause is shown, the trial court has discretion to permit discovery, or to refuse or limit discovery, "to protect against annoyance, embarrassment or oppression, as justice requires." MCL 500.3159.

Thus, although MCR 2.302(C) places a burden on a party seeking relief from discovery to demonstrate good cause, under MCL 500.3159, it is American's burden to establish that good cause exists for the QPO that would allow it to conduct ex parte interviews with plaintiff's treating physicians. See *Broe Rehab Servs*, 289 Mich App at 282 (holding that the insurer demonstrated good cause for its discovery request and was "not merely embarking on a fishing expedition" where the insured's medical service provider had a history of fraud and alleged misdiagnoses of its patients).

We recognize that "Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case," *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011) (quotation marks and citation omitted), and that, generally, "nothing precludes defense counsel from seeking an ex parte interview with a plaintiff's treating physician once the plaintiff has waived the physician-patient privilege." *Holman*, 486 Mich at 449. However, the discovery dispute in this action under the no-fault act is controlled by MCL 500.3159, and under that statute an order of discovery is discretionary with the trial court upon a showing of good cause.

We conclude that the trial court did not abuse its discretion by determining that American failed to demonstrate good cause for the QPO. American presented no evidence that plaintiff attempted to conceal any facts about her medical condition that would necessitate American conducting ex parte interviews with plaintiff's physicians, and it failed to provide any other reason supporting the QPO. "Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition." *Augustine*, 292 Mich App at 420. Accordingly, the trial court did not abuse its discretion in denying, without prejudice, American's motion for a QPO. We note that the trial court's denial of the motion without prejudice does not preclude American from filing another motion for a QPO should the facts warrant it, or from pursuing other modes of discovery from plaintiff's treating physicians, such as depositions or interrogatories, subject to the limitations of MCR 2.314.

Affirmed.


/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle