*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BARBARA SAMPSON,

Plaintiff-Appellee,

v

SHOREPOINTE NURSING CENTER, also
known as WBH NCC #1, LLC,

Defendant,

and

GREAT LAKES PHYSIATRISTS, PC, and
ANTHONY FEMMININEO, M.D.,

Defendants-Appellants.

UNPUBLISHED
July 16, 2020

No. 346927
Macomb Circuit Court
LC No. 2018-003328-NH

Before: GLEICHER, P.J., and GADOLA and LETICA, JJ.

GLEICHER J. (*dissenting*).

In medical malpractice cases, defense counsel may interview a plaintiff's treating physicians ex parte after securing a qualified protective order (QPO). Circuit courts retain the discretion to impose conditions on these ex parte interviews. Plaintiff Barbara Sampson requested a protective order requiring both sides to divulge the dates of any ex parte meetings within 14 days of their occurrence. The trial court incorporated that condition in a protective order. As the information was discoverable, the condition reasonable, and the purpose consistent with MCR 2.302(C), I would affirm the circuit court and respectfully dissent.

## I. BACKGROUND

Barbara Sampson filed a medical malpractice action against defendants related to treatment following a foot surgery. Defendant Shorepointe Nursing Center, which is not a party to this appeal, sought to secure a QPO permitting its counsel to interview ex parte the various treating physicians listed in Sampson's medical records. Great Lakes Physiatrists and Dr. Femminineo concurred.

-1-

By filing this medical malpractice action, Sampson waived her physician-patient privilege. MCL 600.2157; *Holman v Rasak*, 486 Mich 429, 436-437; 785 NW2d 98 (2010). Defense counsel were statutorily permitted to "communicate" with her treating physicians "in order to obtain all information relevant to the subject matter of the claim or action," MCL 600.2912f(2), and to do so ex parte. *Domako v Rowe*, 438 Mich 347; 475 NW2d 30 (1991). To comply with the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq.*, defense counsel had to obtain a QPO. See *Holman*, 486 Mich at 429.

Sampson fought the entry of the QPO, contending that defendants could gather the same information through a more open discovery method: by subpoenaing the doctors' records, deposing the doctors, or submitting written interrogatories. As an alternative, Sampson requested that the court impose as a condition in the QPO that defense counsel notify her of the names of the interviewees and the dates the interviews had taken place. Sampson described "the ramifications on the discovery process" without the notice requirement:

> [P]laintiff's counsel will have to serve interrogatories on the Defendant asking if they have met with any of the plaintiff's treating healthcare providers. Under the Court Rules, the defendant will have 28 days to respond to the interrogatories. As the court is probably aware, it is very unusual for discovery requests to be answered within the 28 day time limit. Therefore, it is probably 45-60 days before a response is received. The typical response to this type of interrogatory is an objection based upon work product. That will require a motion to compel and probably another 30 days to get a motion filed and a hearing date. This is a significant delay in the discovery process.

Defendants challenged the inclusion of a notice condition in the QPO. They asserted that Sampson bore the burden of "show[ing] that justice requires any type of notice." As Sampson had "unfettered access" to her own treatment providers, defendants viewed notice as unnecessary. Sampson could simply contact her physicians and ask whether defense counsel had contacted them, defendants asserted. If Sampson wanted the information on the record, defendants continued, she could depose her treating physicians and ask them if and when defendants interviewed them. Defense counsel continued:

> What he's not entitled to know is when I meet with them, for how long I meet with them, you know, what my thoughts are about that. And the slippery slope that we're getting into with requiring me to do his work is maybe I want to meet with 50 physicians, maybe that discloses that I'm worried about the case. Maybe I don't choose to meet with any physicians. Maybe that discloses that I'm not. Maybe I choose to meet with ten of them but I only want to call three of them, suggesting that these seven have something adverse to my case. That's my business.

The court observed that this information was "not a secret, because he could find that out anyway." "He could," defense counsel agreed, but counsel nevertheless objected to using HIPAA "in the context of litigation where those confidences do not exist as a sword to peek into my thinking." A notice requirement would allow a plaintiff to uncover a defendant's theory of the case and trial strategy, counsel insisted.

The circuit court agreed with Sampson, explaining: "it would be within the range of discovery to say that within 14 days after you've talked to one of the Plaintiff's physicians that you just send notice that we talked to so and so on a given date," without "describing anything more than that." Accordingly, the court entered the QPO with the condition "that within FOURTEEN (14) DAYS after counsel for any party meets ex parte with a treating healthcare provider that counsel shall provide written and electronic notice of the date of that meeting and the identity of the treating provider met with." Notably, this order imposed a *mutual* obligation: both sides were obligated to disclose the fact of a completed ex parte meeting with a treating physician.

## II. DISCUSSION

In my view, the circuit court did not abuse its discretion by imposing a notice requirement in the QPO in this case. Our court rules "acknowledge the wisdom of placing reasonable limits on discovery." *Alberto v Toyota Motor Corp*, 289 Mich App 328, 336; 796 NW2d 490 (2010). Protective orders may also be used to guard against "undue burden or expense[.]" An expense is "undue" if it is unnecessary or unjustified. MCR 2.302(C). The protective order language at issue facilitated a more rapid, efficient, and inexpensive discovery process and in no sense constituted an abuse of discretion.

The abuse of discretion standard requires a reviewing court to focus on whether the circuit court's ruling was "reasonable and principled." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "[T]here [may] be more than one reasonable and principled outcome." *Id*. The circuit court determined that the protective order would serve core protective order values: minimizing the expense and delay inherent in discovery, and streamlining the process. Rather than "hijack[ing]" the QPO concept, as characterized by the majority, the court's protective order imposed limited and rational requirements conforming squarely with the rationale for protective orders in general and QPOs in particular.

In *Holman*, 486 Mich at 442-443, the Supreme Court held that under a QPO, defense counsel in a medical malpractice action may conduct ex parte interviews with the plaintiff's treating physicians "as a means of informal discovery." However, the Supreme Court added that trial courts are not required to grant a motion for a QPO, and retain "discretion under MCR 2.302(C) *to issue protective orders and to impose conditions on ex parte interviews*." *Id*. at 447-448 (emphasis added).

MCR 2.302(C) provides in relevant part:

**Protective Orders.** On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:

(1) that the discovery not be had;

(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters.

(5) that discovery be conducted with no one present except persons designated by the court. . . .

Notably, all of the stated reasons for issuing a protective order involve the control and management of discovery. The majority describes the protective order imposed in this case as unjustified, a sort of end-run around "ordinary incidents of litigation." According to the majority, the "typical discovery process" is not "so unendurable as to be an affront to justice in this case[.]" The majority misunderstands the purpose of protective orders. The party seeking an order need not demonstrate that regular discovery would be "unendurable" or even burdensome. All that is required is "good cause"—"a satisfactory, sound or valid reason." *Thomas M Cooley Law Sch v Doe*, 300 Mich App 245, 264; 833 NW2d 331 (2013) (quotation marks and citation omitted). "A trial court has broad discretion to determine what constitutes 'good cause.' A variety of sound or valid reasons may support a trial court's decision to limit discovery[.]" *Id*. (citation omitted). Relevant here, protective orders are a perfectly acceptable method of "control[ling] the timing and sequence of discovery for the convenience of parties and witnesses and in the interests of justice." *Alberto*, 289 Mich App at 337 (quotation marks and citation omitted); see also MCR 2.302(D).

The majority finds *Szpak v Inyang*, 290 Mich App 711; 803 NW2d 904 (2010), "very close to the [case] at hand." I find *Szpak* easily distinguishable and inapposite. There, the plaintiffs sought *advance* notice of the time, date, and location of ex parte meetings, and sought to actually attend the meetings. Their "good cause" consisted of speculation that the physicians might be subject to intimidation, or that improperly raised subjects would bias the physicians' outlooks. *Id*. at 715. This Court rejected the plaintiffs' argument, reasoning:

We observe that the specter of intimidation raised by plaintiffs would be theoretically present in any medical malpractice case. Plaintiffs have not identified any facts in this case supporting a specific fear that defense counsel would "intimidate" the treating physicians during a voluntary ex parte interview. Further, plaintiffs have not argued that the interviews sought by defendants are not relevant to the issues in this case, or that there is any specific danger of "annoyance, embarrassment, oppression, or undue burden or expense." MCR 2.302(C). They only argue that there is a generalized danger of intimidation. [*Id*. at 715-716 (case citations omitted).]

We rejected that the plaintiffs had established good cause for the encumbered QPO. *Id.*

*Szpak* bears no relationship to this case. Here, plaintiff made a credible showing that the interests of justice would be served by the protective order because it was intended to facilitate discovery. Moreover, the order would have had no effect on defense counsel's ability to conduct ex parte interviews with the medical providers. In contrast, the protective order sought by the plaintiff in *Szpak* would have forced defense counsel to conduct the interviews in the presence of

-4-

plaintiff's counsel. That arrangement would potentially chill defense counsel's ability to freely inquire regarding the physicians' views. Similarly, the advance notice aspect of the *Szpak* protective order may have invited unnecessary and unwarranted intervention or contact by counsel, again potentially constraining the participants' candor.

Those dangers were nonexistent here as the protective order entered by the circuit court compelled only disclosure of the fact that an interview had already taken place. Unlike in *Szpak*, Sampson did not seek *advance* notice of the ex parte interviews, or permission to attend those interviews. Nor had Sampson asked for the production of information concerning the *content* of those interviews. Rather, Sampson merely sought notice of the *date* the interviews occurred and the names of the physicians interviewed. Armed with that limited information, she could then decide whether to proceed with further discovery.

Absent compelled disclosure that an ex parte meeting occurred, counsel for both sides are now forced to engage in a formal discovery method to reliably learn the same information that the majority concedes is discoverable. Interrogatories are an inexpensive and not excessively time-consuming method of determining whether an ex parte meeting took place (assuming they are answered without the need for a motion to compel). But under the newly amended version of MCR 2.309(2), a party is limited to only 20 interrogatories, including "discrete subpart[s]," throughout the life of the litigation. Interrogatories are precious discovery commodities, and must be used judiciously. Here, defendant Shorepointe's 14-page witness list names more than 30 physicians as potential witnesses. Forcing a party to waste interrogatories on otherwise readily available information does not promote the central goals of our discovery rules: securing the "just, speedy, and economical determination of every action[.]" MCR 1.105.

And it makes even less sense to force a party to learn about ex parte meetings by deposing every doctor whose name appears on a witness list. Depositions are often difficult to schedule, expensive, and time consuming. If a doctor is interviewed close to trial, the scheduling order may prohibit a late-in-the-game deposition. The ordered disclosures facilitated trial preparation and likely would have shortened the time required to try the case. The circuit court's decision to compel disclosure of the fact of an ex parte meeting comported with the letter and the spirit of MCR 2.302(C), and fell well within its discretion and duty to "to control the flow of litigation." *Klabunde v Stanley*, 384 Mich 276, 281; 181 NW2d 918 (1970).

The circuit court did not abuse its discretion by imposing a limited protective order intended only to facilitate effective and efficient discovery. I would affirm.

/s/ Elizabeth L. Gleicher