*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHIRLEY IRENE DELUCA,

        Plaintiff-Appellee,

v

BROWNSTOWN ASSISTED LIVING CENTER,
LLC, doing business as BROWNSTOWN FOREST
VIEW ASSISTED LIVING,

        Defendant-Appellant.

UNPUBLISHED
December 06, 2024
11:42 AM

No. 367518
Wayne Circuit Court
LC No. 22-013735-NH

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

MARIANI, J. (*concurring*).

I concur in the majority's conclusion that this matter should be remanded for the trial court to make a finding of good cause regarding the imposition of plaintiff's requested post-meeting notice requirement. MCR 2.302(C) requires "good cause shown" to "issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." And, as recognized in *Szpak v Inyang*, 290 Mich App 711; 803 NW2d 904 (2010), this requirement applies when a plaintiff seeks to impose a notice condition on a defendant's ex parte interviews with the plaintiff's healthcare providers. The trial court in this case, however, imposed plaintiff's requested notice condition without providing any insight as to why it may have deemed the condition warranted under MCR 2.302(C). The trial court must cure this deficiency before it may reimpose the condition.

I write separately to add two observations that may bear on what happens next before the trial court. First, while *Szpak* recognizes the need for a finding of good cause to impose a notice condition on a QPO, it does not purport to precisely dictate or categorically limit what that "good cause" must entail. To the contrary, since *Szpak*, this Court has repeatedly recognized the longstanding principle that, "[i]n the context of our court rules, good cause simply means a satisfactory, sound or valid reason," and "[a] trial court has broad discretion to determine what constitutes good cause." *Thomas M Cooley Law School v Doe*, 300 Mich App 245, 264; 833 NW2d 331 (2013), quoting *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012) (quotation marks and alterations omitted). See also, e.g., *Schaumann-Beltran v Gemmete*, 335 Mich App 41,

54; 966 NW2d 172 (2020), rev'd on other grounds by 509 Mich 979 (2022); *Burris v KAM Transp, Inc*, 301 Mich App 482, 488; 836 NW2d 727 (2013). MCR 2.302(C) identifies a host of general considerations—"annoyance, embarrassment, oppression, or undue burden or expense"—that, together or separately, may form the basis of good cause, and it is for the trial court, in its discretion, to determine how they might fit with the needs and circumstances of the specific matter at hand.

*Szpak* is consistent with this principle, and must be read with it in mind. At issue in *Szpak* was a particular, and particularly burdensome, set of conditions that would have effectively foreclosed the defendant from conducting an ex parte interview with a provider—and thus from availing itself of a permissible form of discovery—unless the plaintiff allowed it. See *Szpak*, 290 Mich App at 714-715 (confirming that "[e]x parte interviews are permitted under Michigan law" and describing the conditions at issue as "requiring defendants to give plaintiffs' attorney notice of the time, date and locations of meeting[s]" and "allowing plaintiffs' counsel to attend the meetings") (quotation marks and citation omitted). The condition at issue in this case, however, is materially different and much less intrusive, leaving defendant with free rein to conduct ex parte interviews and requiring only an after-the-fact notification of whatever ones it may choose to do. It stands to reason—and nothing in *Szpak* suggests otherwise—that the difference in degree and kind between this condition and those in *Szpak* would correspondingly be reflected in the good cause necessary to justify each. That is, while a given "reason" (such as a particular form or extent of annoyance, expense, or burden) may not be sufficiently "satisfactory, sound or valid" to justify conditions as extreme as those in *Szpak*, it may well be enough to support the far more measured condition at issue here.

Second, while a showing of good cause by plaintiff under MCR 2.302(C) is necessary for plaintiff's requested post-meeting notice condition, it does not likewise strike me as necessary for the alternative that plaintiff previously proposed: that the QPO identify the healthcare providers to whom it applies. It seems wholly unexceptional, and wholly within a court's authority and discretion, for a court to want to know and specify to whom its orders apply. And it is not apparent to me why, under *Szpak* or otherwise, the court in this case could not require as much unless plaintiff made a showing of good cause.[1] Indeed, while defendant may prefer to proceed with a

---

[1] For instance, while the conditions at issue in *Szpak* "ha[d] no bearing on the disclosure of health information" and were "unrelated to compliance with HIPAA, or any related privacy concerns," *Szpak*, 290 Mich App at 715-716, the same cannot be said for a QPO's identification of the provider(s) permitted, by virtue of the order, to disclose protected health information under HIPAA.

It also bears noting that a QPO's identification of the provider(s) it covers strikes me as, even if not required by HIPAA, fully consistent with it and the manner in which it seeks to "balanc[e] the need for disclosure in certain contexts with the importance of individual privacy" as to personal (and often personally sensitive) health information. *Holman v Rasak*, 486 Mich 429, 447; 785 NW2d 98 (2010). Cf., e.g., 45 CFR 164.508(c)(1)(*ii*) (providing that, for an individual's authorization of the disclosure of their protected health information to be valid, the authorization must, among other things, contain "[t]he name or other specific identification of the person(s), or

blanket QPO that applies to, without naming, any of plaintiff's providers it may wish to contact, it has identified nothing that would entitle it to proceed in that manner—or, for that matter, that would preclude the court from even requiring it to seek a separate QPO for each individual provider. Needless to say, there is ample reason why a court may want nothing to do with such a provider-by-provider approach and its attendant inefficiencies, and the party seeking the QPO may well have compelling arguments against it. But I fail to see why the court's case-management discretion in that regard would depend on a showing of good cause by the other party, or why that conclusion would hold with any less force for a QPO that identifies and applies to multiple providers rather than just one.

/s/ Philip P. Mariani

---

class of persons, authorized to make the requested use or disclosure"). And while defendant has expressed concern about having to reveal its litigation strategy through its QPO, the order's identification of the provider(s) it covers would not, in itself, require defendant to disclose whether or to what extent it may ultimately choose to contact a given provider.