*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHIRLEY IRENE DELUCA,

        Plaintiff-Appellee,

v

BROWNSTOWN ASSISTED LIVING CENTER,
LLC, doing business as BROWNSTOWN FOREST
VIEW ASSISTED LIVING,

        Defendant-Appellant.

UNPUBLISHED
December 06, 2024
11:42 AM

No. 367518
Wayne Circuit Court
LC No. 22-013735-NH

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

In this medical-malpractice action resulting from injuries plaintiff sustained after falling at
defendant's assisted-living center, defendant appeals by leave granted[1] the May 22, 2023 qualified
protective order (QPO) that permits defendant to conduct ex parte meetings with plaintiff's treating
physicians and healthcare providers subject to a post-meeting notice condition. Defendant asserts
that the trial court did not identify good cause to impose a notice condition upon the meetings, so
the trial court abused its discretion by adding such a condition to the QPO. Although plaintiff has
presented substantial evidence that such a notice condition is commonplace in QPOs issued by the
trial courts in Michigan, this Court has issued an unbroken line of opinions and orders concluding
that such a notice condition is impermissible unless the trial court identifies case-specific facts that
demonstrate such a notice condition is necessary. Because the notice condition in the QPO issued
by the trial court is unsupported by any case-specific facts, we must vacate the portion of the QPO
imposing a notice condition and remand for further proceedings consistent with this opinion.

---

[1] *Deluca v Brownstown Assisted Living Ctr LLC*, unpublished order of the Court of Appeals,
entered December 19, 2023 (Docket No. 367518).

# I. FACTUAL BACKGROUND

Plaintiff filed this suit against defendant for injuries she sustained on May 20, 2020, when another resident at defendant's assisted-living center allegedly caused plaintiff to fall. During the discovery process, defendant requested that the trial court enter a QPO that would permit defendant to conduct ex parte meetings with plaintiff's healthcare providers. Plaintiff insisted that defendant should not be permitted to conduct any ex parte interviews with plaintiff's healthcare providers. Alternatively, plaintiff contended that if the trial court permitted such meetings, defendant should be required to identify the individuals whom it intended to interview or that defendant be required to provide prior notice to plaintiff of any meetings. Plaintiff claimed that a notice condition was appropriate because (1) it would promote the legislative intent of the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq*., by informing plaintiff of the providers who were accessing her health information, (2) other statutes that govern the disclosure of health information impose notice conditions, and (3) plaintiff was entitled to know when her healthcare information had been disclosed and by whom the disclosure was made. Defendant argued in reply that plaintiff had not provided good cause to support the inclusion of a notice condition in the QPO because she had failed to identify any case-specific facts that established good cause to justify the notice condition. Nevertheless, the trial court issued a QPO with a condition requiring defendant to "disclose to Plaintiff within 7 days of any such [ex parte] meetings who they have interviewed." This interlocutory appeal followed.

# II. LEGAL ANALYSIS

On appeal, defendant argues that the trial court abused its discretion by including the post-meeting notice condition in the QPO because plaintiff did not establish good cause to impose that condition. "A trial court's decision on a motion for a protective order is reviewed for an abuse of discretion." *Holman v Rasak*, 486 Mich 429, 449 n 10; 785 NW2d 98 (2010). A trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *Id*. A trial court also abuses its discretion when it errs as a matter of law. *Gay v Select Specialty Hosp*, 295 Mich App 284, 294; 813 NW2d 354 (2012).

"Ex parte interviews are permitted under Michigan law, and nothing in HIPAA specifically precludes them." *Holman*, 486 Mich at 442. HIPAA balances "the need for disclosure in certain contexts with the importance of individual privacy," so ex parte interviews of healthcare providers do not contravene HIPAA's purpose "so long as the interviews are sought according to the specific requirements of 45 CFR 164.512(e)." *Id*. at 447. Under 45 CFR 164.512(e), a "covered entity" may disclose protected health information in the course of any judicial proceeding in response to "a subpoena, discovery request, or other lawful process, that is accompanied by an order of a court" if that covered entity "receives satisfactory assurances . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of" 45 CFR 164.512(e)(1)(*v*). In order to meet the requirements of 45 CFR 164.512(e)(1)(*v*), a QPO must clearly state that it "[p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested" and it "[r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding." 45 CFR 164.512(e)(1)(*v*)(A)-(B).

If conditions imposed in a QPO have no bearing on the disclosure of health information, such as a requirement that plaintiff's counsel be notified of any ex parte meetings, "MCR 2.302(C) requires that the additional conditions be justified in their own right." *Szpak v Inyang*, 290 Mich App 711, 715; 803 NW2d 904 (2010). According to MCR 2.302(C), "[o]n motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Thus, a trial court cannot impose a condition on an ex parte interview unless good cause for the condition has been established. *Szpak*, 290 Mich at 714. Generalized concerns are insufficient to establish good cause. *Id*. at 716. Instead, the party seeking the imposition of a condition must identify case-specific facts demonstrating good cause to impose the requested condition. *Id*. at 715-716. A fear that could be "theoretically present in any medical malpractice case" is insufficient to demonstrate good cause. *Id*. at 715.

Here, the trial court entered a QPO that permitted defendant to conduct ex parte meetings with plaintiff's treating physicians and healthcare providers, provided that defendant must disclose to plaintiff whom it interviewed within 7 days. The trial court made no factual findings to support the imposition of that condition. On appeal, defendant argues that plaintiff failed to establish good cause to impose the notice condition, so the trial court abused its discretion when it included that condition in the QPO. Plaintiff insists there was good cause to impose the notice condition because (1) notice would enable plaintiff to avoid the lengthy process of finding out about those meetings through traditional discovery procedures, (2) the notice provision addressed the privacy concerns associated with those meetings, and (3) plaintiff is entitled under HIPAA to information about who is disseminating her protected health information. Plaintiff's justifications for the notice condition are unpersuasive, especially when none of those justifications was reflected in any findings of fact rendered by the trial court.

As in *Szpak*, plaintiff's request for notice of meetings with her healthcare providers has no bearing on the disclosure of her health information, so "MCR 2.302(C) requires that the additional conditions be justified in their own right." *Szpak*, 290 Mich App at 715. Plaintiff's claim that the notice condition was justified because it provides an efficient method for her to obtain information about the ex parte interviews is meritless. Despite general grievances about the discovery process, plaintiff has not articulated how she would suffer "undue burden or expense" by using the standard discovery procedures to obtain information about ex parte interviews. See MCR 2.302(C).

This Court recently rejected that claim in *Sampson v Shorepointe Nursing Ctr*, unpublished per curiam opinion of the Court of Appeals, issued July 16, 2020 (Docket No. 346927), p 4.[2] In that case, the plaintiff asserted that it was appropriate to impose a post-meeting notice condition because "her counsel might find it burdensome to undertake ordinary mechanisms of discovery to determine when and with whom ex parte interviews took place, particularly given the likelihood that defendants will assert the work product privilege in denying the requested information." *Id*. This Court concluded that that was "essentially an argument for convenience," and disagreed that

---

[2] "Although unpublished opinions of this Court are not binding precedent, they may . . . be considered instructive or persuasive." *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010) (citations omitted); see MCR 7.215(C)(1).

"an ordinary discovery request, and the assertion of privilege in response to the request, is an undue burden on plaintiffs in this, or in any other, case." *Id*. Accordingly, this Court concluded that the trial court abused its discretion by imposing the notice condition. *Id*. at 2. We likewise conclude that the use of ordinary discovery tools to obtain information about any ex parte meeting defendant conducted does not impose an undue burden on plaintiffs, so that justification is insufficient under MCR 2.302(C) to support a notice requirement.

Plaintiff also argues that, without the notice condition, the ex parte meetings would infringe on her privacy interests because she would be unable to monitor the dissemination of her protected health information. She further contends that HIPAA entitles her to receive information about that dissemination. But Michigan law permits ex parte meetings of this nature, *Holman*, 486 Mich at 442, and a post-meeting notice condition is unrelated to dissemination of information in ex parte meetings. See *Szpak*, 290 Mich App at 715. Indeed, HIPAA allows the dissemination of protected health information pursuant to a QPO under certain conditions, but notification to plaintiff that the dissemination occurred is not one of those conditions. See 45 CFR 164.512(e)(1)(*v*)(A)-(B). And although plaintiff insists that she is entitled to that information under HIPAA, she has not explained why that entitlement, or her desire to monitor dissemination of her protected health information, could not be accomplished through ordinary discovery, which she concedes is an available option.

Our Supreme Court addressed the claim that ex parte interviews with healthcare providers conflict with HIPAA's purpose of protecting the privacy of plaintiffs' health information. *Holman*, 486 Mich at 446. The Supreme Court noted that HIPAA seeks to balance "the need for disclosure in certain contexts with the importance of individual privacy," and ruled that ex parte interviews do not undermine the objectives of HIPAA "so long as the interviews are sought according to the specific requirements of 45 CFR 164.512(e)." *Id*. at 447. Here, the QPO that defendant proposed met the requirements of 45 CFR 164.512(e)(1)(*v*), so it did not require the addition of any notice condition to uphold the purpose of HIPAA.

Furthermore, plaintiff's purported justifications for the notice condition do not include any case-specific facts revealing a "specific fear" of "annoyance, embarrassment, oppression, or undue burden or expense" that would be ameliorated by a notice requirement. See *Szpak*, 290 Mich App at 715-716. Plaintiff's three justifications for the notice condition merely amounted to generalized concerns that would apply with equal force to any case where the dissemination of protected health information was at issue. Generalized concerns are not sufficient to establish good cause to add a notice requirement to a QPO. *Id*. at 716. Thus, plaintiff did not demonstrate good cause to support the imposition of a notice condition. Because plaintiff failed to establish good cause to impose the notice condition, the trial court abused its discretion when it imposed the notice condition without offering any findings of fact to satisfy the "good cause" standard in MCR 2.302(C). See *id*. (stating that a trial court abuses its discretion when it implements a condition in a QPO in the absence of a showing of good cause for the condition). Although plaintiff has supplied ample evidence that the inclusion of a notice requirement in QPOs is a common practice in the trial courts of this state, the standards prescribed in MCR 2.302(C) and refined by this Court in our published and unpublished

opinions and orders leave no doubt that the common practice is unsustainable as a matter of law.[3] To be sure, the trial court has the power on remand to render case-specific findings of fact and then impose a notice condition if those findings of fact establish "good cause" as contemplated by MCR 2.302(C) and the rulings of this Court. But on the existing record, we must vacate the trial court's inclusion of a notice condition in the QPO.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh

---

[3] In the unpublished opinion in *Sampson*, this Court quoted extensively from two orders that struck notice requirements virtually identical to the notice provision in this case. *Sampson*, unpub op at 4 n 2.